UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

T-Peg, Inc. and
Timberpeg East, Inc.,
     Plaintiffs

     v.                                  Civil No. 03-cv-462-SM
                                          Opinion No. 2005 DNH 152
Vermont Timber Works, Inc.
and Douglas S. Friant,
     Defendants


**O R D E R**


     Defendants (collectively "VTW") prevailed in plaintiffs' (collectively "Timberpeg") copyright infringement suit. Defendants now move for costs and attorneys' fees. Plaintiffs object. For the reasons given below, VTW's motion for attorneys' fees is granted.

     Under the Copyright Act, "the court in its discretion . . . may . . . award a reasonable attorney's fee to the prevailing party as a part of the costs." 17 U.S.C. § 505. A number of factors are properly considered in determining fee awards.

     These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in

> particular circumstances to advance considerations of compensation and deterrence." <u>Lieb v. Topstone Industries, Inc.</u>, 788 F.2d 151, 156 ([3d Cir.] 1986). We agree that such factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.[1]

<u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 534 n.19 (1994). When assessing factors such as frivolousness and objective unreasonableness, the analysis should focus on what a party knew when it pressed a claim or defense, rather than on what decisions that party might have made with the benefit of the court's subsequent resolution of the case. <u>See</u> <u>InvesSys, Inc. v. McGraw-Hill Cos.</u>, 369 F.3d 16, 21 (1st Cir. 2004) (citing <u>Tang v. R.I. Dep't of Elderly Affairs</u>, 163 F.3d 7, 13 (1st Cir. 1998)).

Here, it might be a stretch to say that Timberpeg's suit was patently frivolous from the outset. When Timberpeg filed suit, its agents knew that: (1) Stanley Isbitski was a former client/customer for whom Timberpeg prepared several sets of house

---

[1] "[T]he overriding purpose of the Copyright Act [is] to encourage the production of original literary, artistic, and musical expression for the public good." <u>Lotus Dev. Corp. v. Borland Int'l, Inc.</u>, 140 F.3d 70, 73 (1st Cir. 1998) (citing <u>Fogerty</u>, 510 U.S. at 534).

plans; (2) one set of Timberpeg's plans had been placed on file by Isbitski with the Town of Salisbury; (3) Isbitski showed Timberpeg's plans to VTW; (4) VTW designed a post-and-beam frame to support a portion of the house designed by Timberpeg; and (5) the house ultimately built on the VTW frame was substantially similar in appearance and lay-out to the house Timberpeg designed for Isbitski.  Based upon that knowledge, Timberpeg could have plausibly thought, initially at least, that VTW copied its architectural plans.

Objective reasonableness, however, is a different matter. The objective reasonableness inquiry includes an examination of both the factual basis and the legal basis for a party's claim or defense.  <u>Fogerty</u>, 510 U.S. at 534 n.19.

Timberpeg argues, based upon the undisputed fact that the VTW frame was capable of supporting a portion of the house Timberpeg designed, that it was objectively reasonable for it to conclude, as a factual matter, that VTW's "timberframe must have been prepared on the basis of [Timberpeg's] architectural plans." The reasonableness of that conclusion was bolstered, Timberpeg

contends, by its discovery, prior to filing suit, that Isbitski had actually shown Timberpeg's plans to a VTW frame designer. While it might have been objectively reasonable, as a factual matter, for Timberpeg to have concluded that VTW based its frame design on the floor plans and elevations Timberpeg had prepared for Isbitski, it was certainly not reasonable for Timberpeg to conclude that VTW copied a Timberpeg <u>frame</u> <u>design</u>, since Timberpeg never designed a frame.

Timberpeg also contends that its legal theory of liability was objectively reasonable. Relying upon language from <u>Hunt v. Pasternack</u>, 192 F.3d 877 (9th Cir. 1999), and the legislative history of the Architectural Works Copyright Protection Act ("AWCPA"), Timberpeg grounded its copyright infringement claim on VTW's "mere use[] of the plans to design a structure, as opposed to first duplicating the plans [and] then using the duplicated plans to design/create a structure." The question, then, is whether it was objectively reasonable for Timberpeg to assert that VTW's timberframe design, or the timberframe itself, constituted an infringing copy of Timberpeg's architectural plans

or the architectural work embodied in those plans.  The answer, quite plainly, is "no."

    Academic support does exist for the proposition that a completed building or structure can itself constitute an infringing copy of an architectural work.  See, e.g., Louis Altman, Copyright on Architectural Works, 33 IDEA 1, 61 (1992) ("In contrast to the pre-1990 law, building designs covered by the Architectural Works Copyright Protection Act can be infringed not only by copying the design in the form of two-dimensional plans or drawings or a three-dimensional model, but also by the construction of a full-sized building which embodies the protected design . . .") (footnotes omitted); Andrew S. Pollock, Comment, The Architectural Works Copyright Protection Act: An Analysis of Probable Ramifications and Arising Issues, 70 NEB. L. REV. 873, 881-87 (1991).  Moreover, as Timberpeg correctly notes, Hunt characterizes the House Report on the AWCPA as making it "clear that an unconstructed work, embodied only in plans or drawings, can be infringed by a structure that embodies the copied design."  192 F.3d at 880 (emphasis added).  And, H.R. REP. No. 101-735, reprinted in 1990 U.S.C.C.A.N. 6935, uses the

term "infringing buildings" at several points.  Id. at 6944 & 6953 n.50.

So, it cannot be said that Timberpeg's legal theory of liability – that a structure can itself constitute an infringing copy of an architectural work – was, in the abstract, objectively unreasonable.  But the issue here is more focused.  First, VTW did not design or construct a building that looked like the one designed by Timberpeg.  Indeed, VTW did not design or construct any building at all; it designed and constructed a discrete component of a building – a post-and-beam frame.  Timberpeg did not design a post-and-beam frame; it simply designed floor plans and elevations according to the general specifications provided by Isbitski.  And, the record is clear that a number of alternative frame types and designs would suffice to support the building Timberpeg designed.

When Timberpeg filed suit it knew that it had not developed a frame design for Isbitski (that is, it never created an architectural work related to a post-and-beam frame).  Timberpeg knew as well that it had not produced any drawing or plan related

to a frame design. And Timberpeg knew that VTW designed and built only a timberframe. And Timberpeg necessarily understood that its building design could be supported by any number of frame types and designs. Accordingly, Timberpeg's copyright infringement claim consisted, essentially, of an assertion that its architectural work (the overall house design), embodied without a frame design, was infringed by VTW's own timberframe design, unembellished by other architectural details.

Timberpeg's theory of infringement ignored the reality that its frameless architectural work could be supported by a variety of different frame designs and framing systems.[2] It also ignored the fact that the frame VTW designed and built was capable of supporting a variety of different architectural designs – any number of which would be non-infringing with respect to Timberpeg's house design. In other words, there was no necessary infringing correlation between Timberpeg's architectural work (the house plans) and VTW's frame design, just as there is no

---

[2] That Timberpeg's architectural work could be supported by several different frame designs and framing systems is borne out by the fact that Timberpeg's preliminary plans for Isbitski's house called for (but did not depict) a purlin and rafter framing system while its construction plans for the same house called for (but did not depict) a frame employing a bent system.

7

necessary correlation between VTW's frame design and Timberpeg's architectural work.

It was, therefore, objectively unreasonable for Timberpeg to sue VTW based upon a claim that VTW's frame constituted an embodiment of Timberpeg's house plans.  That VTW's frame could <u>accommodate</u> Timberpeg's house design hardly made that frame an infringing copy of Timberpeg's house plans.  Timberpeg's legal theory – that VTW's <u>frame</u> infringed – was objectively unreasonable in the context of this case, and amounted to an attempt by Timberpeg to extend its copyright protection substantially further than legally permissible.  <u>See</u> <u>Matthews v. Freedman</u>, 157 F.3d 25, 29 (1st Cir. 1998) (affirming district court's determination of objective unreasonableness when plaintiff tried "to extend her copyright protection far beyond what [was] allowed by law").

The remaining <u>Fogerty</u> factors also support an award of costs and fees.  Regarding Timberpeg's motivation, the assertion of an objectively unreasonable claim goes beyond any legitimate attempt to clarify or extend the scope of copyright law but, rather,

suggests "a desire to discourage and financially damage a competitor by forcing it into costly litigation." Yankee Candle Co. v. Bridgewater Candle Co., 140 F. Supp. 2d 111, 116 (D. Mass. 2001) (citing NLFC, Inc. v. Devcom Mid-America, Inc., 916 F. Supp. 751, 759-60 (N.D. Ill. 1996)).

Timberpeg's commitment to protecting its intellectual property through litigation, or the threat of litigation, is apparently strong, as it should be.  But this case crosses the line between vigorous protection and unwarranted intimidation. An award of costs and fees will serve the important purpose of deterring Timberpeg and others from the kind of imaginative overreaching represented by the legal theory it attempted to force upon the unsuitable facts of this case.

VTW has demonstrated its entitlement to costs and attorneys' fees under 17 U.S.C. § 505.  Accordingly, its motion for costs and fees (document no. 100) is granted.  All that remains is to determine the amount.

VTW initially requested an award of $118,631.93[3] and has since requested an additional $1,840, representing fees generated by its review of and reply to Timberpeg's objection to its fee request.  Timberpeg counters that the amount requested by VTW is unreasonable, and seeks several specific reductions, each of which is addressed below.

Under the fee-shifting provisions of the Copyright Act, as "[u]nder most federal fee-shifting statutes . . . the trial judge must determine 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  "In implementing this lodestar approach, the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." Gay Officers, 247 F.3d at 295 (citing Lipsett v.

---

[3] This figure includes $772.50 in billings from two previous attorneys, plus 553 hours of Attorney Whittington's time, billed at $200 per hour, and 56 hours of Attorney Whittington's paralegal's time, billed at $85 per hour.

Blanco, 975 F.2d 934, 937 (1st Cir. 1992); United States v. Metro. Dist. Comm'n, 847 F.2d 12, 15-17 (1st Cir. 1988); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950-51 (1st Cir. 1984)).

    Timberpeg correctly points out that VTW has not offered affidavits or other evidence supporting the reasonableness of Attorney Whittington's hourly rate of $200. But based upon the court's knowledge of legal practice in New Hampshire, $200 per hour falls comfortably within the range of reasonable billing rates for practitioners of Attorney Whittington's level of experience and ability.

    Timberpeg argues that $53,837 should be deducted from VTW's award, to prevent VTW from realizing a windfall. Timberpeg points to the fee arrangement between VTW and Whittington, and suggests that the actual fee charged will be less than that claimed in the fee petition. But unlike the fee agreement in Jewish Employment & Vocational Service, Inc. v. Pleasantville Educational Supply Corp., 601 F. Supp. 224 (E.D. Pa. 1983), under which the attorney charged half his usual fee but promised to

pursue full reimbursement and allow the client to pocket the difference, the fee agreement between VTW and Attorney Whittington explicitly precludes any such outcome.  All fees collected by VTW will be paid to Whittington's firm, at the full billing rate.  That the client might incur a reduced obligation if full fees are not recovered is a benefit that does not extend to Timberpeg, nor should it.  Accordingly, the requested reduction, based upon Jewish Employment, is denied.

Timberpeg requests an additional reduction of ten percent, based upon the alleged lack of detail in Attorney Whittington's billing records.  This is not a case like Grendel's Den, where there was an absence of contemporaneous billing records.  749 F.2d at 951.  Nor is it a case like Yankee Candle, in which the prevailing defendant's request for fees was reduced by ten percent primarily because of "the rather substantial amount of time [the defendant's] attorneys spent in conferences with each other."  140 F. Supp. 2d at 125.  Timberpeg has not identified any specific "excessive hours, duplication of services, [or] fruitless pursuits," id. (citation omitted), and it is not entitled to a ten-percent reduction in fees.

Timberpeg also argues that VTW's fee award should be reduced by $4,640 – the amount billed for VTW's unsuccessful motion to dismiss. But that motion, while denied, was neither tangential nor frivolous. Rather, work on the motion to dismiss, which focused on the same issues raised in the subsequent motion for summary judgment, contributed to VTW's success on that latter motion and was, therefore, neither fruitless nor unproductive.

Timberpeg also contends that Attorney Whittington spent excessive time on VTW's motion for summary judgment and that VTW's request for $18,000 in fees for that motion should be reduced by fifty percent. In Timberpeg's words, "[t]o a significant extent, defense counsel billed for his education in copyright law for which Timberpeg should not be forced to pay." Attorney Whittington's billing records disclose that over the course of the entire case, the number of hours he and his paralegal devoted to legal research fell somewhere between 31 and 131. In those billing records, 31 hours are accounted for by entries listing only research activities, while another 100 hours are accounted for in listings that include both research and other activities. Assuming that half the time represented by

those mixed entries was devoted to research, VTW seeks reimbursement for approximately 80 hours of research time.  That seems a reasonable amount of time to have devoted to legal research, over seventeen months, in a case whose complexity flowed, largely, from Timberpeg's legal theory.

   Timberpeg argues, as well, that VTW's request for fees should be reduced by $5,405, the amount Attorney Whittington billed for representing Kim Hentschel at her deposition.  While Hentschel was no longer a VTW employee at the time of her deposition, she was employed by VTW at the time Isbitski dealt with the company, and those dealings were the subject of the deposition.  Attorney Whittington billed VTW, not Hentschel, for the cost of representing Hentschel at the deposition.  But whether he was, strictly speaking, representing Hentschel, or attended the deposition on behalf of VTW, or both, the fees would have been substantially identical.  The record suggests that Whittington's representation was dual but the fees charged were not.  VTW was properly charged for that time for services rendered to it.

Timberpeg also challenges: (1) an invoice dated December 29, 2004, in the amount of $2,250, which VTW subsequently identified as an expert witness fee; (2) another expert witness fee of $1,350, on an invoice dated April 12, 2005; and (3) a $229.50 billing for legal research and a memorandum related to VTW's inadvertent disclosure of information to Timberpeg during discovery.

VTW may not recover expert witness fees.  "[C]osts that may be assessed to reimburse a prevailing party [in a copyright infringement case] for its expert witness fees are limited to the $40 limit provided for in 28 U.S.C. § 1821(b)."  Artisan Contractors Ass'n of Am., Inc. v. Frontier Ins. Co., 275 F.3d 1038, 1040 (11th Cir. 2001); see also Pinkham v. Camex, Inc., 84 F.3d 292, 295 (8th Cir. 1996) ("we conclude costs under 17 U.S.C. § 505 are limited to the costs expressly identified in 28 U.S.C. § 1920, and that expert witness fees in excess of the 28 U.S.C. § 1821(b) $40 limit are not recoverable"); Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 406 (S.D.N.Y. 2004) ("Given that the authority provided by § 505 of the Copyright Act mirrors that of 28 U.S.C. § 1920 recovery [of expert witness fees in

excess of $40] is also barred under the Copyright Act."); NLFC, 916 F. Supp. at 764 (denying expert witness fees in excess of $40 in copyright infringement case). Accordingly, VTW's fee request must be reduced by $3,600, the amount of the expert witness fees.

Finally, regarding the $229.50 billing for research into remedies for VTW's inadvertent disclosure of information to Timberpeg during discovery, it is perhaps more appropriate that VTW bear that cost. After all, the work was necessary only because VTW was careless. It is a small amount, but Timberpeg's point is well taken. The fee request is reduced by $229.50.

**Conclusion**

For the reasons given, Attorney Whittington's hourly rate, and that of his paralegal, are reasonable. The hours expended on VTW's defense against Timberpeg's claims are also reasonable, for the following reasons: (1) duplication of effort and excessive consultation were minimized by Attorney Whittington's status as a sole practitioner; (2) the case involved several complicated discovery disputes; (3) the case was vigorously contested on both sides; and (4) the stakes were high for VTW due to the company's

relatively small size and the potentially debilitating effect of an unfavorable outcome.  Because the hourly rates and the number of hours expended on the defense of this case are both reasonable, the lodestar figure that results from multiplying the latter by the former is presumed reasonable.  Accordingly, VTW is entitled to costs and attorneys' fees in the amount of $116,642.43.  That figure represents VTW's original request, plus the cost of litigating the issue of fees ($1,840), minus the non-recoverable expert witness fees ($3,600), and the fee associated with the inadvertent disclosure ($229.50).

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

November 8, 2005

cc:  W. E. Whittington, IV, Esq.
     Daniel E. Will, Esq.