UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

T-Peg, Inc. and Timberpeg
East, Inc.,
    Plaintiffs

    v.                                    Civil No. 03-cv-462-SM
                                          Opinion No. 2008 DNH 060
Vermont Timber Works, Inc.
and Douglas Friant,
    Defendants

**O R D E R**

In light of the court's summary judgment order (document no. 90), and the decision of the court of appeals, T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97 (1st Cir. 2006), this case consists of two counts of copyright infringement arising out of defendants' alleged use of the Isbitski house architectural work, which was registered by plaintiff T-Peg, Inc. ("T-Peg"), to manufacture and assemble a timber frame for Stanley Isbitski. Consistently with the decision of the court of appeals, this court, by oral order on March 12, 2007, granted defendants' motion to reopen their two previous motions for summary judgment (document nos. 23 and 44).¹  Plaintiffs appear not to have moved

---

¹ The court also reopened defendants' motion for judgment on the pleadings (document no. 33), but subsequently, portions of that motion were deemed moot, and the rest was denied (see document no. 138).

to reopen their own cross-motion for summary judgment (document no. 25). Currently before the court are defendants' two re-opened summary judgment motions, as well as plaintiffs' motion for partial summary judgment (document no. 124), defendants' motion for judgment on the pleadings (document no. 125), and a new summary judgment motion filed by defendants (document no. 126).

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trial-worthy issue exists." Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003) (citing Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)). When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003) (citing Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 185 (1st Cir. 2003)).

**Background**

The summary judgment record includes the following undisputed facts.  Timberpeg East is a wholly owned subsidiary of T-Peg.  (Pl.'s Obj. to Summ. J. (document no. 135), Ex. A (First Neroni Aff.) ¶ 4.)  In support of his affidavit, Timberpeg East's chief operating officer, who is also an officer of T-Peg, produced an undated and unexecuted copy of a document purporting to be a contract between Timberpeg East and T-Peg which provides, in pertinent part:

1. Timberpeg East, Inc., a T-Peg, Inc. authorized licensee with authority to market and sell the TIMBERPEG® brand product line, conveys and assigns to T-Peg, Inc. co-ownership and co-claimant rights to any and all copyrightable/copyrighted material produced or acquired by Timberpeg East.  Timberpeg East also conveys and assigns to T-Peg, Inc. full and complete authority to use, convey, and license said copyrightable/copyrighted material to promote the marketing, sale, design, and manufacture of the TIMBERPEG® brand product line.  Timberpeg East further conveys and assigns to T-Peg, Inc. full and complete authority to register the copyright on any said copyrightable/copyrighted material in the name of T-Peg, Inc. and Timberpeg East, Inc.

2. T-Peg, Inc. conveys and assigns to Timberpeg East the non-exclusive right to use T-Peg, Inc.'s copyrightable/copyrighted material to promote the marketing and sale of the TIMBERPEG® brand product line.

(Id., Ex. A-1.)  Plaintiffs also produced undisputed evidence that the two companies acted in accordance with the contractual terms quoted above.  (First Neroni Aff. ¶ 5.)

Timberpeg Services, Inc. ("Timberpeg Services"), which provides design, drafting, and manufacturing services to Timberpeg East, is also a wholly owned subsidiary of T-Peg. (First Neroni Aff. ¶ 4.)  Timberpeg Services and Timberpeg East operated under a service agreement that provided, among other things, that Timberpeg Services[2] "assign[ed] and agree[d] to assign to [Timberpeg East] or its nominee all rights in inventions or other proprietary information, including, but not limited to, copyright interests conceived by [Timberpeg Services] during the term of this Agreement with respect to any work that [Timberpeg Services] performs under this Agreement."  (Pl.'s Obj. to Summ. J., Ex. A-2.)

---

[2] The service agreement is actually between Timberpeg East and Timberpeg Design Services Division.  (Pl.'s Obj. to Summ. J., Ex. A-2.)  However, when Timberpeg Design Services Division was incorporated as Timberpeg Services, Inc., in 2000, Timberpeg Services assumed all the rights, duties, and obligations of Timberpeg Design Services Division.  (Id., Ex. B (Second Neroni Aff.) ¶ 5.)

4

Timberpeg East's regional manager, Lynn Cole, was the principal point of contact between Isbitski and the various Timberpeg companies (Pl.'s Obj. to Summ. J., Ex. C (Cole Aff.) ¶ 1), and was primarily responsible for designing the Isbitski house (id.). After Cole created the design of the house, he sent his hand-drawn floor plans to Joe Downey, a draftsman employed by Timberpeg Services, who converted those floor plans into architectural plans using a computer-aided design program. (Id. ¶ 4.)

The certificate of registration for the Isbitski house architectural work, VAu 510-781, was signed by Jonathan Vincent, who identified himself as "Director of Design, Timberpeg Design Services," and as an authorized agent of T-Peg. (Pl.'s Mot. Summ. J. (document no. 24), Ex. E.) The certificate lists T-Peg as both the sole author and the sole claimant, and identifies the work as a "work made for hire." (Id.) The portion of the form on which the claimant is asked to describe any transfers of ownership was left blank. (Id.)

## Discussion

The court begins with the issue of standing, as raised by defendants' most recent motion for summary judgment. Defendants

contend that the undisputed factual record demonstrates that: "(1) plaintiffs did not create, and are not the authors of, the architectural work which is the subject of this action, (2) plaintiffs therefore are not owners of the copyright, and (3) plaintiffs lack standing to bring this action."  (Defs.' Mot. Summ. J. (document no. 126) at 1.)  Plaintiffs counter that they own the copyright jointly and, consequently, each has standing to sue to enforce it.

"To establish copyright infringement under the Copyright Act, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  T-Peg, 459 F.3d at 108 (internal quotation omitted) (quoting Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005)).

Regarding T-Peg's ownership, defendants argue that notwithstanding the rebuttable presumption created by the certificate of registration, which lists T-Peg as "author," the undisputed factual record demonstrates that T-Peg is not the author, because it did not create the work or employ anyone who created the work as a work made for hire.  According to defendants, because T-Peg is not the author of the work, it is

also not an owner with standing to sue.  Plaintiffs counter that T-Peg's ownership is not based upon authorship but, rather, upon its status as the assignee, from Timberpeg East, of an undivided share in the copyrighted work, pursuant to the contract quoted above.  Plaintiffs further argue that defendants lack standing to challenge the validity of the assignment from Timberpeg East to T-Peg, because the statutory writing requirement upon which that challenge would be based is designed to resolve disputes among those claiming to own a copyright, not questions concerning standing to sue for infringement.  Defendants do not respond to plaintiffs' argument that they lack standing to challenge the assignment from Timberpeg East to T-Peg, and contend only that it is too late for plaintiffs to assert that T-Peg is an owner by assignment rather than an owner by virtue of authorship.

    Under the Copyright Act, standing to sue for infringement is limited to "[t]he legal or beneficial owner of an exclusive right under a copyright."  17 U.S.C. § 501(b).  More specifically, "[t]he Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights."  Eden Toys, Inc. v. Florelee Undergarment Co., 697 F.2d 27, 32 (2d Cir. 1982).

Ownership of a copyright arises from authorship, see 17 U.S.C. § 201(a), or from a transfer of ownership, see 17 U.S.C. § 201(d), and "vests initially in the author or authors of the work," 17 U.S.C. § 201(a).

> If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright. See Bell v. Combined Registry Co., 397 F. Supp. 1241, 1245 (N.D. Ill. 1975), aff'd, 536 F.2d 164 (7th Cir.), cert. denied, 429 U.S. 1001 (1976). Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act. Cf. Eden Toys, Inc. v. Florelee Undergarment Co., 697 F.2d 27 (2d Cir. 1982).

Motta v. Samuel Weiser, Inc., 768 F.2d 481, 484 (1st Cir. 1985) (parallel citations omitted).

Here, it is undisputed that T-Peg was not the author of the Isbitski house architectural work, even though it is listed as such on the certificate of registration. But that is where the clarity in the record begins to dissipate.

The parties disagree about authorship. Defendants argue that Timberpeg Services, as the employer of Joe Downey, is the author under the work-for-hire doctrine. Plaintiffs contend, under the same doctrine, that Timberpeg East is the author by

virtue of its employment of Lynn Cole.  This dispute, however, might be unimportant.  Even if Downey created the work, making Timberpeg Services the author, the service agreement between Timberpeg Services and Timberpeg East appears to grant Timberpeg East an ownership interest sufficient to confer standing to sue for infringement, presuming the work is covered by a valid registration (which is not clear).

T-Peg's status is a different matter.  Notwithstanding the listing of T-Peg as "author" and "claimant" on the registration form, plaintiffs now argue that T-Peg is an owner not by virtue of authorship, but by virtue of the assignment effected by its contract with Timberpeg East.  However, the contract provisions purporting to grant ownership status to T-Peg are facially inconsistent, and perhaps even self-contradictory.

It is difficult to determine, from the document alone, just what Timberpeg East conveyed, or meant to convey, to T-Peg in paragraph 1 of the asserted agreement.  The first sentence purports to "convey[ ] and assign[ ] . . . co-ownership and co-claimant rights," which would appear to be all the rights Timberpeg East had to convey, with the result that those rights were to be held jointly, in the manner of tenants in common.

Yet, the second sentence provides that "Timberpeg East <u>also</u> conveys and assigns" (emphasis added) various other rights, and does so in a manner that reads like a limitation.  If the first sentence conveyed a one-half undivided interest in all of Timberpeg East's rights, it is difficult to understand what was meant by "also," particularly when what follows "also" describes something less than full co-ownership.  And then there is the puzzling third sentence.  That sentence seemingly "<u>further</u> conveys . . . full and complete authority [to T-Peg] to register the copyright on [Timberpeg East's] copyrightable/ copyrighted material in the name of T-Peg, Inc. <u>and</u> Timberpeg East, Inc." (emphasis added).  Again, the language used, though phrased as an "addition" reads like a limitation on the rights conveyed – <u>i.e.</u>, T-Peg was not authorized to register Timberpeg East's works in its own name only (as it did here).

In short, the asserted contract purporting to grant T-Peg co-ownership rights in Timberpeg East's copyrightable material provides a rather unsure basis upon which to grant summary judgment as to standing.  The record raises more question than it answers, and they are questions that matter.  A plaintiff's right to relief in a copyright infringement action must be founded on "ownership of a valid copyright," <u>T-Peg</u>, 459 F.3d at 108, and the

unsettled question of what, precisely, T-Peg owns, bears critically on both its standing as a copyright owner, see Motta, 768 F.2d at 484, and the validity of the copyright on which this suit is based, see Morgan, Inc. v. White Rock Distilleries, Inc., 230 F. Supp. 2d 104, 107-08 (D. Me. 2002) (holding that copyright registration by a non-owner had no legal effect, and was legally insufficient to support a copyright infringement action).

The bottom line is this. Defendants' motion for summary judgment (document no. 126) is denied because the undisputed fact that T-Peg is not the author of the copyrighted work is not, as a matter of law, dispositive of T-Peg's status as an owner or its ability to register that work. On the other hand, while defendants justifiably complain about what seems to be a constantly moving target, given plaintiffs' serial reliance on alternate theories of authorship,[3] the dispositive issues related to standing are probably not dependent upon determining authorship as between Timberpeg East and Timberpeg Services. Denial of defendants's motion should not be taken to mean that

---

[3] Those theories are: (1) the registration form's now-disclaimed identification of T-Peg as author; (2) the apparent portrayal of Timberpeg Services as author in interrogatory answers, which attributed all of Timberpeg's design time to Downey; and (3) plaintiff's current theory that Timberpeg East was the author, due to Cole's creation of the work.

plaintiffs have established T-Peg's standing to sue, or that they have established the validity of the registration, upon which Timberpeg East presumably relies for its standing.  They have not.

Given the importance of the standing issue, and the jurisdictional questions raised by issues related to T-Peg's ownership of the work it registered, see Morgan, 230 F. Supp. 2d at 109, the parties are directed to brief the issue of T-Peg's ownership of the work it registered.  In doing so, they should also provide a statement of undisputed and disputed material facts material to the validity and the proper construction of the contract purporting to transfer ownership interests from Timberpeg East to Timberpeg East and T-Peg jointly.  They should also address two additional questions: (1) What, exactly, did T-Peg receive from Timberpeg East if it got less than full ownership; (2) the legal effect of a transfer of less than full ownership on both T-Peg's standing to sue and its ability to register the copyright on which this case is based; and (3) how the contract provisions should be construed.

Having disposed of document no. 126, the court now turns, briefly, to the remaining pending motions.  In document no. 23,

defendants argue that plaintiffs' copyright claims fail as a matter of law because: (1) there is no evidence that VTW had access to the copyrighted material; (2) their timberframe is not "substantially similar" to anything created by the plaintiffs; (3) the Copyright Act extends to "buildings," not "other structures" such as mere timberframes; and (4) as to Timberpeg East, the claim is defective because Timberpeg East is not the owner of any copyright.  Defendants' first three arguments are foreclosed by the decision of the court of appeals.  See T-Peg, 459 F.3d at 111, 112-16.  The fourth argument fails, for reasons discussed above; Timberpeg East is the owner of the copyright either by virtue of authorship, or by virtue of the assignment from Timberpeg Services by means of a conveyance that presents none of the questions that arise from the purported conveyance from Timberpeg East to T-Peg and Timberpeg East, jointly. Accordingly, the motion for summary judgment presented in document no. 23 is denied.

In document no. 44, defendants move for summary judgment on plaintiffs' copyright claim(s) on grounds that: (1) plaintiffs admit that none of the components allegedly copied was creative; and (2) they had no profits attributable to their alleged infringement.  Defendants' first argument has been foreclosed by

the court of appeals, see T-Peg, 459 F.3d at 110, and disputed issues of material fact preclude granting summary judgment on their second issue.  Thus, the motion for summary judgment presented in document no. 44 is necessarily denied.

In document no. 124, plaintiffs move for partial summary judgment on two issues it contends were resolved in its favor by the court of appeals, namely, that: (1) "its plans reflect an original architectural work that is entitled to protection under the Copyright Act," and (2) "that VTW had access to the Timberpeg plans, thereby establishing the first element of proof through indirect evidence that VTW copied the Timberpeg plans." Plaintiffs misapprehend the scope of the decision of the court of appeals.  First, the court of appeals did not have before it the issue of whether plaintiffs' architectural work was copyrightable.  See T-Peg, 459 F.3d at 108 ("VTW does not challenge Timberpeg's ownership of a valid copyright in this case.").  To be sure, the court did state that "Timberpeg bases its claims here on a combination of elements, which taken together, are protectable under the definition of an architectural work in 17 U.S.C. § 101." T-Peg, 459 F.3d at 115. But because this court never reached defendants' argument that plaintiffs' architectural work was not copyrightable (see

document no. 90 (mooting document no. 44, in which defendants first raised their argument on non-copyrightability)), the court of appeals, necessarily, did not decide that the work is, as a matter of law, copyrightable.  Second, the court of appeals did not determine that the record demonstrated defendants' access to the copyrighted work as a matter of law; it merely held that a trier of fact could impute access.  Because the court did not hold that a reasonable jury would be obligated to impute access, plaintiffs' argument is unavailing.  Accordingly, the summary judgment motion presented in document no. 124 is denied.

Finally, in document no. 125, which is styled as motion for judgment on the pleadings, defendants ask the court to strike: (1) plaintiffs' claims for infringement of their plans (architectural drawings); (2) any claims based on or arising out of the Isbitski deposit agreement; and (3) any claims based on or arising out of various plans and/or previous plans and/or designs, i.e., plans or designs predating the date on which the architectural work at issue here was registered.  Defendants object on a several grounds, and characterize the motion as not one for judgment on the pleadings, but as a motion to strike or a motion in limine.

15

While sharing, to a degree, plaintiffs' perplexity over the precise nature of defendants' motion, the court also recognizes at least some of what may have prompted it.  For example, in document no. 131, plaintiffs state that they have "never sought an infringement claim on the status of its architectural plans as a 'pictor[i]al, graphic or sculptural work' under the Copyright Act nor do its allegations suggest anything of the sort."  Yet, plaintiffs began document no. 124 by saying: "This is an action for copyright infringement arising out of a set of architectural plans created by Timberpeg . . ." and "Timberpeg alleges that VTW . . . infringed the Timberpeg plans . . . ."  Based upon plaintiffs' characterization of their own case, it is not difficult to see why defendants may have believed they were being charged with infringing a set of plans rather than an architectural work.

That being said, the motion presented in document no. 125 is denied, with the understanding that defendants may raise those issues when and if appropriate, at trial.  Plaintiffs are on notice of the need for precision when characterizing copyright infringement claims.  The two sentences quoted above are a small sampling of many instances in which pleadings employ language in a way suggesting that the architectural plans deposited with the

registration comprise the protected work, rather than being merely an embodiment of the architectural work at issue.

To recap, all the currently pending motions (document nos. 23, 44, 124, 125, and 126) are denied, and the parties are directed to confer and either agree to a briefing schedule, or propose separate briefing schedules for the court's consideration, regarding the specified legal (and perhaps factual) issues.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 28, 2008

cc:  Jonathan M. Shirley, Esq.
     W. E. Whittington, Esq.
     Daniel E. Will, Esq.

17