UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

T-Peg, Inc. and Timberpeg
East, Inc.,
    Plaintiffs

    v.                                  Civil No. 03-cv-462-SM
                                        Opinion No. 2009 DNH 034
Vermont Timber Works, Inc.
and Douglas Friant,
    Defendants

**O R D E R**

Defendants move for partial reconsideration of the court's order of March 28, 2008, denying their motion for summary judgement (document no. 30). Plaintiffs object.

**The Legal Standard**

"Under Fed. R. Civ. P. 59(e), a court may alter or amend a judgment based on a manifest error of law or fact or newly discovered evidence." Zukowski v. St. Lukes Home Care Program, 326 F.3d 278, 282 n.3 (1st Cir. 2003) (internal quotation marks omitted) (quoting Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997)).

**Question of Law: The Abstract/Filtration Test**

Defendants argue that summary judgment was improperly denied because the court failed to apply the "separation" or

"dissection" test. In reliance upon Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005), defendants argue that a "court 'must engage in dissection of the copyrighted work by separating its original, protected, expressive elements from those aspects that are not copyrightable.'" (Defs.' Mot. for Recons. (document 149) at 6.) Moreover, defendants argue that "this dissection or separation process has never been addressed in this case either by this Court or the First Circuit." (Id. at 7.) Ultimately, defendants contend that after "filtering out" the protectible elements from the non-protectible, there are no similarities between the copyrighted work and the alleged infringing work.

Plaintiffs, on the other hand, object to defendants' motion for reconsideration, arguing that: (1) defendants' "'separation/filtration' argument is contrary to the definition of architectural works under the Copyright Act and decisional law interpreting the Architectural Works Protection Act;" and (2) "[i]t also fails to overcome the factual question of substantial similarity identified by the First Circuit." (Pls.' Obj. (document no. 151) at 2.)

Under the Copyright Act, as amended by the Architectural Works Protection Act ("AWCPA"), an "architectural work" is defined as:

> the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. §101. The First Circuit explained that the definition includes the "design of a building as embodied in any tangible medium of expression," T-Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 109 (1st Cir. 2006), as well as "the overall form as well as the arrangement and composition of spaces and elements in the design," id. at 110, but "does not include the individual standard features." Id. The legislative history sheds light on the second component:

> [t]he phrase 'arrangement and composition of spaces and elements' recognizes that: (1) creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotectible elements into an original, protectible whole; (2) an architect may incorporate new, protectible design elements into otherwise standard, unprotectible building features; and (3) interior architecture may be protected.

Id. (quoting H.R. Rep. No. 101-735, reprinted in 1990 U.S.C.C.A.N. at 6949). Thus, it is clear that an architectural work can be comprised of otherwise unprotectible standard features. See T-Peg, 459 F.3d at 110 ("while individual standard features may not be individually copyrightable . . . the combination of such standard features may be copyrightable").

3

Under traditional copyright principles, a court separates a copyrighted work's "original, protected expressive elements from those aspects that are not copyrightable because they represent unprotected ideas or unoriginal expressions." <u>Johnson</u>, 409 F.3d at 19 (citing <u>Concrete Mach. Co. v. Classic Lawn Ornaments</u>, 843 F.2d 600, 608 (1st Cir. 1988)).  The rationale behind this procedure is that "[w]hile a finding of substantial similarity vel non derives from an examination of the juxtaposed works as a whole, that examination must focus on 'what aspects of the plaintiff's work are protectible under copyright laws and whether whatever copying took place appropriated those [protected] elements.'"  <u>Id.</u> (quoting <u>Matthews v. Freedman</u>, 157 F.3d 25, 27 (1st Cir. 1998)).

Defendants ask this court to adopt the reasoning employed by the courts in <u>Tiseo Architects, Inc. v. B & B Pools Service & Supply Co.</u>, 495 F.3d 344 (6th Cir. 2007), and <u>Trek Leasing, Inc. v. United States</u>, 66 Fed. Cl. 8 (Fed. Cl. 2005), in which the dissection test was applied in copyright cases involving architecture.  These decisions are unhelpful here for several reasons.

In Tiseo, "[t]he trial court filtered out many elements of Tiseo Architects' site plan drawings because they were unoriginal." 495 F.3d at 348 (internal quotations omitted). On appeal, the Sixth Circuit affirmed the district court's legal analysis and conclusion. Id. Tiseo, however, is not on point because it does not appear to have been brought under the AWCPA, see id. at 346-47, which Act established, for architectural works, "a standard of copyrightability more generous than that accorded pictorial, graphic, or sculptural works." T-Peg, 459 F.3d at 110.

In Trek Leasing, the trial court filtered out the unprotectible aspects of an architectural work, concluding that "[b]ecause of the constraints of the BIA Pueblo Revival style, and the other external factors, the copyright of [p]laintiff's architectural work is necessarily a 'thin' one," 66 Fed. Cl. at 17, and, on that basis, granted summary judgement for the defendant. Id. at 23. Among the elements filtered out by the trial court were those depicted in a set of drawings titled "Standard Post Office Building Design USPS 65A." Id. at 16. Those drawings specified, among other things, "dimensions, placement of windows and doors, etc.," id. at 11, and there was "no dispute that the USPS standard drawings [made] up at least 50% of the [allegedly infringed] design," id. at 16. The USPS

65A drawings would appear, for all intents or purposes, to depict an arrangement and composition of spaces and elements.

The facts of Trek Leasing are readily distinguishable from the case at hand.  In Trek Leasing, the court, which filtered out the arrangement and composition of spaces and elements depicted in the 65A drawings, still went on to determine whether there was substantial similarity between what remained after filtration and the allegedly infringing design.  The court explained that, "[a]lthough each [element] in isolation might be subject to exclusion from the court's calculus, the conceptual interrelationship of [elements] should remain present for the court's analysis even after filtering out particular concrete objects, thus subjecting the defendant to potential liability should copying of those elements be proven."  Trek Leasing, 66 Fed. Cl. at 22–23 (quoting 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.03(F)(5)).  The court then concluded that the plaintiff could not seek protection in the arrangement and compilation of spaces "because the arrangement [was] dictated by the USPS standards and because the combination of elements [was] standard in the BIA Pueblo Revival style."[1]  Id.

---

[1] The BIA Pueblo Revival style was characterized as a scène à faire.  The doctrine of scènes à faire applies when the similarity of expression results from stock scenes or elements that necessarily flow from a common idea. See generally 3 NIMMER & NIMMER, supra, § 13.03[B][3], at 13-76 (2008); § 13.03[B][4], at 13-82.

Here, by contrast, defendants propose to filter out individual elements, but not consider the overall arrangement and composition of spaces and elements, i.e., the architectural work at issue. Defendants' analysis fails to take full account of the definition of an architectural work. Trek Leasing involved filtering out unprotectible elements that included the arrangement and composition of spaces and elements. But here, defendants have not made any effort to filter out the arrangement and composition of spaces and elements in the designs at issue. Thus, Trek Leasing is not analogous to this case and does not support a grant of summary judgement in defendants' favor.

## Conclusion

For the reasons given, defendants' motion for reconsideration (document no. 149) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 27, 2009

cc:  Daniel E. Will, Esq.
     Jonathan M. Shirley, Esq.
     W. E. Whittington, Esq.