UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

T-Peg, Inc. and
Timberpeg East, Inc.,
Plaintiffs

v.

Civil No. 03-cv-462-SM
Opinion No. 2010 DNH 172

Vermont Timber Works, Inc.
and Douglas S. Friant,
Defendants

**O R D E R**

After the jury returned a verdict in favor of the defendants (collectively "VTW") in this copyright infringement suit, they moved for an award of attorney's fees in the amount of $232,905.07. Plaintiffs (collectively "Timberpeg") object. For the reasons given, VTW's motion is granted in part and denied in part.

Under the Copyright Act, "the court in its discretion . . . may . . . award a reasonable attorney's fee to the prevailing party as a part of the costs." 17 U.S.C. § 505 (emphasis added). That provision modifies the usual American Rule, under which each party pays its own fees. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 533-34 (1994). To obtain an award of fees in a copyright case, then, one must be a prevailing party. But, as the fee

award is discretionary, prevailing party status, alone, does not give rise to an entitlement. More is necessary.

The Supreme Court has identified a non-exclusive set of factors district courts should consider when exercising equitable discretion to award or deny attorney's fees in copyright cases.

> These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Lieb v. Topstone Industries, Inc., 788 F.2d 151, 156 ([3d Cir.] 1986). . . . [S]uch factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.

Fogerty, 510 U.S. at 534 n.19[1]. The Court stressed that "[t]here is no precise rule or formula for making these determinations."

[1] "[T]he overriding purpose of the Copyright Act [is] to encourage the production of original literary, artistic, and musical expression for the public good." Lotus Dev. Corp. v. Borland Int'l, 140 F.3d 70, 73 (1st Cir. 1998) (citing Fogerty, 510 U.S. at 534). It is well established that the purpose of the Copyright Act may be served by awarding fees to either plaintiffs or defendants who prevail in copyright suits. See Fogerty, 510 U.S. at 526-27; InvesSys, Inc. v. McGraw-Hill Cos., 369 F.3d, 16, 20 (1st Cir. 2004) ("[I]n section 505 Congress aimed to provide a potential incentive to the winner who asserts a successful copyright claim or defends against an unworthy one. This practical concern is present whether the case happens to decide a landmark issue of copyright law or, in the end, turns on matters that have nothing to do with the statute."); Lotus, 140 F.3d at 75 ("a copyright defendant's success on the merits of a case of first impression may militate in favor of a fee award").

Id. at 534 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)); see also Lotus Dev. Corp. v. Borland Int'l, 140 F.3d 70, 75 (1st Cir. 1998) ("Fogerty made clear that courts are to evaluate cases on an individualized basis").

The Court in Fogerty, however, squarely rejected "the 'dual standard' for the award of fees, then in effect in many circuits, . . . which required prevailing defendants to demonstrate that the plaintiff's claims were frivolous or brought in bad faith." Lotus, 140 F.3d at 72. That is, "[u]nder the case law, dishonesty is not required for an award [of fees to a prevailing defendant]; even a case that is merely objectively quite weak can warrant such an award." InvesSys, Inc. v. McGraw-Hill Cos., 369 F.3d 16, 20-21 (1st Cir. 2004) (citing Matthews v. Freedman, 157 F.3d 25, 29 (1st Cir. 1998)). In fact, depending upon the circumstances present in a particular case, "a district court could conclude that the losing party should pay even if all its arguments were reasonable." Matthews, 157 F.3d at 29. In sum, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." Fogerty, 510 U.S. at 534.

Finally, when assessing factors such as frivolousness and objective unreasonableness, the analysis should focus on what a party knew when it pressed a claim or defense, rather than on what decisions that party might have made with the benefit of the court's subsequent resolution of the case. See InvesSys, 369 F.3d at 21 (1st Cir. 2004) (citing Tang v. R.I. Dep't of Elderly Affairs, 163 F.3d 7, 13 (1st Cir. 1998)).

VTW contends that it should be awarded fees because: (1) Timberpeg's infringement claim was frivolous;[2] (2) Timberpeg pursued its claim in bad faith; (3) the circumstances of this case call for compensation and deterrence; (4) Timberpeg made various misrepresentations to this court and the court of appeals, obfuscated the factual record, and shifted its legal theories (with respect to copyright ownership and "precise" similarity) in a manner that warrants an award of fees. Timberpeg disagrees, and opposes any fee award, relying in large

[2] VTW asserts at least five bases for arguing that Timberpeg's claim was frivolous: (1) it was unreasonable for Timberpeg to claim that VTW's timber frame was substantially similar to the copyrighted architectural work; (2) Timberpeg made allegations that were inconsistent with what it learned from its site visit to the house that was partially built by Stanley Isbitski; (3) Timberpeg did not allege any wrongdoing other than copying to support its state-law claims; (4) Timberpeg's characterization of certain letters from VTW's counsel was "ridiculous" in light of facts developed after the case was remanded by the court of appeals; and (5) Timberpeg failed to heed VTW's own repeated warnings that the case was frivolous.

measure on a pre-trial opinion by the court of appeals reversing this court's entry of summary judgment for the defendants, and remanding the case for trial. See T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97 (1st Cir. 2006). Having considered the factors described in Fogerty, and the circumstances and nuances of this particular litigation, I conclude that VTW should recover attorney's fees, but in an amount significantly less than that requested.

As noted, this court earlier granted defendants' motion for summary judgment on grounds that no reasonable jury could conclude that the bent timberframe, as constructed by VTW and embodied in its shop drawings, was substantially similar to the architectural work embodied in Timberpeg's registered house plans. Plaintiffs appealed that judgment, and prevailed.

The court of appeals examined the background facts in great detail, and thoroughly analyzed pertinent aspects of copyright law and provisions of "the Architectural Works Copyright Protection Act ('AWCPA'), Pub. L. No. 101-650, §§ 701-706, 104 Stat. 5089, 5133-34 (1990) (codified in scattered sections of 17 U.S.C.), which created a new category of copyrightable subject matter for 'architectural works.' 17 U.S.C. § 102(a)(8)." T-Peg, 459 F.3d at 108.

The court of appeals noted that under the ordinary observer test, two works can be found to be substantially similar

> if a reasonable, ordinary observer, upon examination of the two works, would "conclude that the defendant unlawfully appropriated the plaintiff's protectable expression." The two works need not be exact copies to be substantially similar. Differences between the works have some effect on the inquiry, but the mere existence of differences is insufficient to end the matter in the defendant's favor.

Id. at 112 (citations omitted).

The court found many probative similarities between the two works at issue in this case: the backwards-L-shaped footprint with exactly the same dimensions; the location and similar size of a kitchen "bump out" along the western wall; a central switch-back staircase in precisely the same location; a lofted second floor in the same location and of similar dimensions; identical roof pitch and dimensions; similar wall heights; seeming anticipation of an additional wing to be attached to the eastern side of the building; as well as similar numbers and locations of support posts. Considering those similarities, in the context of a number of dissimilarities, the appeals court concluded that "[a] reasonable jury, properly considering this combination of elements, could conclude that VTW's frame was substantially similar to Timberpeg's registered plans," id. at 114, keeping in mind that "the definition of an 'architectural work [includes]

the overall form as well as the arrangement and composition of spaces and elements in the design,'" Id. at 113-14 (quoting 17 U.S.C. § 101). Those similarities gave rise to material factual disputes that precluded summary judgment and required a trial.

Upon remand, the case was set for trial. The evidence presented was generally consistent with that considered by the court of appeals, though defendants did present additional evidence of dissimilarities between plaintiffs' work and the VTW frame and shop drawings – e.g., many windows, skylights, and doors as designed by plaintiffs would have had to be moved or other adjustments made for the defendants' designed frame to accommodate them. But that additional evidence of dissimilarities, while relevant, did not, in the overall context, preclude a jury's determination that the works were substantially similar, nor did it establish the absence of copying beyond legitimate contest.

Had this been a bench trial, the court would have reached the same conclusion as the jury, finding that plaintiffs failed, by a comfortable margin, to prove by a preponderance of the evidence that defendants actually copied their registered plans. That conclusion, perhaps like the jury's, would have followed both from a comparison of the similarities and dissimilarities

between the respective works, and the very credible denial of actual copying by Douglas Friant, coupled with the persuasive explanation for the many similarities (and dissimilarities) between the works offered by defendants — i.e., that both parties interacted with a third party, Stanley Isbitski, the person seeking to construct his "dream home." That the work done by defendants reflected, in many respects, the same general "overall form as well as the arrangement and composition of spaces and elements," 17 U.S.C. § 101, should not come as a great surprise, given that Isbitski no doubt pursued the same general vision with both parties, likely relying on the general design details reduced to plans by plaintiffs when directing defendants.

The jury's verdict, on the other hand, was not so inevitable as to have reduced the trial to a mere play whose ending was already written. Based on the evidence presented at trial, and applying the law as articulated by the court of appeals, a reasonable jury might have found by a preponderance that Isbitski did provide plaintiff's registered plans to defendants, and that defendants actually copied that work in developing substantially similar shop drawings and constructing a frame. But, on balance, plaintiffs had the appreciably weaker case on the merits.

Contrary to defendants’ persistent insistence, plaintiffs’ copyright infringement claim was a reasonable and viable one, as determined on appeal, and one supported by the facts known to defendants when they filed suit, and throughout the trial, although comparatively weak on the merits. It is unarguable, given the opinion by the court of appeals, that plaintiffs’ copyright claim rested upon a solid legal foundation. The claim was not factually unreasonable; not legally unreasonable; and not frivolous.

I reject the notion that plaintiffs’ pursuit of their claim was motivated by any improper purpose. Plaintiffs are entitled to protect their legitimate intellectual property interests, through litigation if necessary, particularly when the factual and legal premises establish the objective reasonableness of those claims, as they did here. The record does not, in my view, support defendants’ contention that the underlying motivation here was plaintiffs’ determination to run up costs for defendants so as to adversely affect VTW’s ability to compete in the marketplace, or to extract an unwarranted settlement, or to intimidate VTW and dissuade it and others from serving customers who might have had prior contacts with plaintiffs. The record simply does not suggest any bad faith on the part of plaintiffs.

Defendants also allude to discovery abuses by plaintiffs ("stonewalling"). But those discovery disputes were transitory and, to the extent plaintiffs deviated from expected conduct in that regard, the Magistrate Judge imposed corrective sanctions that adequately addressed the issue.

Defendants also suggest bad faith by plaintiffs in the form of misleading the court of appeals, as well as this court, with respect to outcome-determinative facts. But the court of appeals' opinion exhaustively and accurately recounted the relevant facts, and recognized both the similarities and dissimilarities between the works, noting that, in this case, whether the works were substantially similar was essentially a matter of degree, and that a jury would have to resolve the issue. That a number of dissimilarities were apparent served to contradict plaintiffs' claim that "precise" harmony existed between the two works, but those argumentative statements (or overstatements) did not constitute "bad faith," nor did they establish any improper motivation. Neither this court nor, one trusts, the court of appeals, based any critical determination on such argumentative hyperbole.

Whether considerations of compensation and deterrence warrant an award of fees presents a serious question. On the one

hand, plaintiffs' pursuit of their infringement claim plainly fosters the purposes of copyright law — "to encourage the production of original literary, artistic, and musical expression for the public good." Lotus, 140 F.3d at 73. Protecting intellectual property interests in such works is also consistent with the purposes of the fee-shifting provision of Section 505, one of which is to provide an incentive to copyright owners to seek protection even when economic realities might otherwise counsel abandonment.

Here, plaintiffs need not be deterred from bringing insubstantial claims — their claims, though weak, were objectively reasonable, factually and legally, and plaintiffs proceeded in good faith. Indeed, having found themselves in a more vigorous (and expensive) legal contest than they perhaps anticipated, plaintiffs persevered and succeeded in overturning a judgment entered against them. In the process, they obtained an extensive and detailed explication and clarification of the law — one largely favorable to their own general interest, and the general interest of all creators of architectural works (including the defendants). That is, plaintiffs, though not ultimately successful on the merits at trial, did achieve other noteworthy successes in the litigation.

On the other hand, defendants did prevail. And to prevail, they unrelentingly persevered in asserting and presenting a meritorious defense to a factually weak infringement claim, at great expense. (Both parties incurred substantial, one might easily say "excessive," expenses in prosecuting and defending this case — which at bottom involved a claim of copying plans worth, at most, some ten or fifteen thousand dollars. But, for reasons apparently satisfactory to them, each elected to exercise its legitimate prerogative to fight to the bitter end.)

As noted in Fogerty, an award of fees can properly encourage copyright defendants to assert meritorious defenses. Fogerty, 510 U.S. at 527; Lotus, 140 F.3d at 75. Helpful guidance on that point is set out in Lotus:

> Turning to the need to encourage meritorious defenses, a copyright defendant's success on the merits in a case of first impression may militate in favor of a fee award, but we are unwilling to hold that a successful defense in an important case necessarily mandates an award of attorney's fees. When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff who, in a particular case, may have advanced a reasonable, albeit unsuccessful claim. Fogerty made clear that courts are to evaluate cases on an individualized basis, with the primary responsibility resting on the shoulders of the district judge.

Id.

Striking a balance in this case is necessarily fraught with ambiguity and contradiction. The British Rule (losing parties automatically pay opponent's fees) has not been established in copyright cases — something more than that defendant prevailed must militate in favor of a fee award, and the fee award itself is both discretionary and ought to reflect the purposes of copyright law. Factors relating to plaintiff misconduct, oppressiveness, bad faith, unreasonableness — that is, some suggestion of culpable behavior — are not present here, but are no longer necessary to justify a fee award to a prevailing defendant.

The court finds that a modest award (modest in comparison to the actual fees incurred) in favor of defendants is warranted. A trial on the merits was practically unavoidable, and defendants proceeded to trial and were vindicated — plaintiffs failed to prove copying. While perhaps not a "novel case of first impression" in every classical sense, the issues raised were reasonably new, and the decision by the court of appeals did confirm the expanded reach and broad protections afforded architectural works under the AWCPA, to the decided benefit of plaintiffs and defendants, as well as others involved in the same

industry. Plaintiffs, of course, had "to sue in the first place" to obtain that beneficial decision.

Given all of these circumstances, and balancing the interest in encouraging the assertion of meritorious defenses against the potentially chilling effect that imposition of a large fee award may have on these and other plaintiffs, who may, as here, advance reasonable, albeit comparatively weak and ultimately unsuccessful, architectural copyright infringement claims, the court will award the prevailing defendants $35,000.00 in attorney's fees. That sum is well below the requested amount of $232,905.07 (plus a small amount for work related to the fee request itself). But the full amount requested is not reasonable for several reasons. It includes substantial fees incurred during the appeal (which defendants lost and for which the court of appeals awarded costs to plaintiffs. T-Peg, 459 F.3d at 116); includes sums related to litigation of issues in this court on which defendants did not prevail; and includes fees agreed to be shared.

In the main, however, an award of $35,000.00 represents the striking of an appropriate balance. It is a sum sufficient to both encourage innocent defendants to (reasonably) present and pursue meritorious defenses, without discouraging copyright

owners from (reasonably) seeking to enforce their rights when a sound basis to assert a claim exists (thereby encouraging the production of original architectural works). Yet, it is a sum sufficient to deter plaintiffs with reasonable claims, and defendants with meritorious defenses, from litigating in a manner greatly disproportional to the matter at stake (arguably the case here). No award, a lesser award, even a larger award, could each be supported by legitimate argument in this case. But having carefully considered all of the pertinent factors and having weighed the many interests at stake, and having presided over this lengthy litigation, and having observed the often unnecessary and unproductive contentiousness between the parties, I conclude that a discretionary award of partial attorney's fees as described above is fair and adequate.

**Conclusion**

Defendants' Motion to Award Attorneys Fees (document no. 224) is granted in part and denied in part. Defendants are awarded $35,000.00 in attorney's fees and recoverable costs.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

September 30, 2010

cc: Daniel E. Will, Esq.
Jonathan M. Shirley, Esq.
W. E. Whittington, Esq.